IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF TENNESSEE *ex. rel.* ROBERT E. COOPER, Jr., in his official capacity as the Attorney General and Reporter of Tennessee, and JAMES H. FYKE, in his official capacity as the Commissioner of the Tennessee Department of Environment and Conservation, | Civil No. |
| Plaintiffs, | |
| v. | |
| DAVID MILLER, LLC, | |
| Defendant. | |

COMPLAINT

Plaintiffs, the United States of America, by authority of the Attorney General of the United States, at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Tennessee, by the authority of the Attorney General of the State of Tennessee at the request of the Tennessee Department of Environment and Conservation ("TDEC"), and by and through their undersigned attorneys, allege as follows:

INTRODUCTION

1. This is a civil action for injunctive relief, civil penalties, and damages brought pursuant to the Clean Water Act, 33 U.S.C. § 1319(b) and (d) and the Tennessee Water Quality Control Act of 1977, Tenn. Code Ann. §§ 69-3-115(a)(2)(D), 69-3-116, and -117, against David

Miller, LLC ("Defendant") for the discharge of pollutants without a permit in violation of 33 U.S.C. § 1311; and for the discharge of pollutants and alterations to waters of the State of Tennessee (hereinafter "waters of the state") without authorization in violation of Tenn. Code Ann. § 69-3-108; and for violations of the conditions of general permits issued by the State of Tennessee pursuant to Tenn. Code Ann. § 69-3-108(j) for discharge of pollutants from storm water from construction sites and alterations of waters.

JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and 33 U.S.C. § 1319(b). The Court has jurisdiction over the claims of Tennessee pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Venue is proper in this District pursuant to 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 and 1395, because the Defendant conducts business in this District, and because the violations occurred in this District.

4. Notice of the commencement of this action has been given to the State of Tennessee in accordance with 33 U.S.C. § 1319(b).

DEFENDANT

5. David Miller, LLC is a limited liability company formed under the laws of the State of Tennessee and is a "person" as defined in 33 U.S.C. § 1362(5), 40 C.F.R. § 122.2, and Tenn. Code Ann. § 69-3-103(25). David Miller is the principal of David Miller, LLC.

6. David Miller, LLC has its primary place of business and conducts business within the Western District of Tennessee.

7. David Miller, LLC is a residential home developer that performs or contracts for

the performance of grading, grubbing, clearing, and earth-moving at residential construction sites and provided such services at the Oaklawn Estates residential construction site ("Oaklawn" or "the Site"), which is the subject of this action.

STATUTORY AND REGULATORY AUTHORITY

8. The Clean Water Act is designed to restore and maintain the chemical, physical and biological integrity of the nation's waters. 33 U.S.C. § 1251(a). The Tennessee Water Quality Control Act of 1977 ("WQCA") was enacted for similar purposes. See Tenn. Code Ann. § 69-3-102.

9. To accomplish the objectives of the Act, 33 U.S.C. § 1311(a) prohibits the discharge of pollutants by any person except in certain circumstances, including in compliance with a permit issued pursuant to 33 U.S.C. § 1342 or 33 U.S.C. § 1344. See also Tenn. Code Ann. §§ 69-3-108 and 69-3-114(b).

10. The Clean Water Act defines "discharge of pollutants" as the "addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). The term "navigable waters" means waters of the United States. 33 U.S.C. § 1362 (7). The WQCA defines "discharge of a pollutant" as "the addition of pollutants to waters from a source," with the term "waters" meaning waters of the state. Tenn. Code Ann. § 69-3-103(10) and -103(42).

11. The Clean Water Act requires permits for discharges of pollutants in storm water runoff associated with industrial activity. 33 U.S.C. § 1342(p). The WQCA requires permits for activities which alter the "physical, chemical, radiological, biological, or bacteriological properties of any waters of the state." Tenn. Code Ann. §§ 69-3-108(b)(1) and 69-3-114(b).

12. Federal regulations define the term "storm water discharge associated with

industrial activity" to include, among other things, storm water discharges from construction activities, including clearing, grading, and excavation activities, that result in a disturbance of five or more acres of total land area, or that result in disturbance of more than one but less than five acres. 40 C.F.R. § 122.26(b)(14)(x); (b)(15)(i). The regulations also set forth the permit application requirements for storm water discharges. 40 C.F.R. § 122.26.

13. Pursuant to the Clean Water Act, states may issue their own storm water permits if they are authorized by EPA to do so. 33 U.S.C. § 1342(b). The State of Tennessee has been authorized to issue storm water permits and has, under the WQCA, issued the Tennessee General NPDES Permit for Discharges of Storm Water Associated with Construction Activities, TNR 10-0000 ("TNCGP"). One version of the TNCGP was effective from July 1, 2000 until May 31, 2005. Another version, cited herein, became applicable on July 17, 2005 and remains in effect.

14. Point source discharges of storm water from construction activities including clearing, grading, filling and excavating (including borrow pits containing erodible material), or other similar construction activities that result in the disturbance of one acre or more of total land area require coverage under the TNCGP. TNCGP, TNR 10-0000, Part 1.2.1. The TNCGP requires that an application for coverage under the TNCGP must be submitted at least 30 days prior to commencement of regulated construction activities. TNCGP, TNR 10-0000, Part 2.4.2.

15. Non-compliance with the terms of a state-issued permit constitutes a violation of the Clean Water Act's prohibition on the discharge of pollutants. 33 U.S.C. § 1311(a). Non-compliance with the TNCGP constitutes a violation of the WQCA. Tenn. Code. Ann. § 69-3-114(b).

16. The TNCGP requires a person to obtain coverage under the TNCGP if that person engages in construction defined as industrial activity by 40 C.F.R. § 122.26(b)(14)(x) or (b)(15)(i) and meets the definition of "operator" by having operational control over construction plans and specifications, or by having day-to-day operational control of those activities which are necessary to ensure compliance with permit conditions. TNCGP, TNR10-0000, Parts 1.2.1 and 2.2.1.

17. Any person subject to the TNCGP is required to develop a storm water pollution prevention plan ("SWPPP") which sets forth a plan for reducing the pollutants in storm water discharges from the construction site and assuring compliance with the TNCGP. Under the TNCGP, the SWPPP must meet specific requirements and include certain information (such as the order and schedule of construction activities, the soil type, a description of the drainage patterns at the site, and which person is responsible for implementing each portion of the plan). The TNCGP further requires that the SWPPP be implemented as written from commencement of construction activity until final stabilization of the site is complete. TNGCP, TNR10-0000, Part 3.

18. At the heart of the SWPPP is the selection of best management practices ("BMPs") designed to eliminate to the extent feasible the migration of pollution from construction sites into the nation's waters or waters of the state. These practices include measures to prevent erosion (such as requiring stabilization practices like seeding or mulching exposed soil) and measures to capture sediment before it leaves the site (such as silt fences and sedimentation basins). TNGCP, TNR 10-0000, Parts 3.5.3.1 and 3.5.3.2.

19. The TNCGP also requires the permittee to implement the SWPPP and to properly implement and maintain the BMPs to eliminate, to the extent feasible, discharges of storm water to the nation's waters or waters of the state. TNCGP, TNR10-0000, Part 3.1.

20. The TNCGP imposes additional requirements, including those for inspection of the site during construction, updating of the SWPPP to reflect changing site conditions, and final stabilization of the site followed by termination of permit coverage. TNCGP, TNR10-0000, Parts 3.5.8; 3.4; 3.1; and 7 (respectively).

21. Common alterations to waters of the state, including, but not limited to, road crossings of waters of the state, utility line crossings of waters of the state, and stabilization of banks of waters of the state, generally require authorization under a general aquatic resource alteration permit ("ARAP"), which enumerates certain terms and conditions that must be followed. Tenn. Code Ann. §§ 69-3-108(b)(1), 69-3-108(j), and 69-3-114(b).

22. The TNCGP prohibits the placement of solid materials into waters of the state except as authorized by a CWA Section 404 permit or a state ARAP. TNCGP, TNR10-0000, Part 3.5.5(a).

23. The Clean Water Act authorizes the Administrator of EPA "to commence a civil action for appropriate relief, including a permanent or temporary injunction," when any person is in violation of 33 U.S.C. § 1311 or of any permit issued pursuant to 33 U.S.C. § 1342, including state permits. 33 U.S.C. § 1319(b). Tennessee is authorized to seek injunctive relief pursuant to Tenn Code Ann. § 69-3-117.

24. The Clean Water Act, in conjunction with the Debt Collection Improvement Act of 1996, Pub. L. 104-134, and the Civil Monetary Inflation Rule, 61 Fed. Reg. 69360 (December 31, 1996), provides, in part, that any person who violates 33 U.S.C. §§ 1311, or any permit issued pursuant to 33 U.S.C. §§ 1342 shall be subject to a civil penalty not to exceed $32,500 per day for each violation through January 12, 2009. Tennessee is authorized to seek civil penalties pursuant

to Tenn Code Ann. § 69-3-115(a)(2)(D).

FACTUAL ALLEGATIONS

25. This case involves discharges of pollutants to navigable waters, and waters of the state without a permit, violations of the TNCGP, alterations commenced without prior authorizations under a general ARAP; and violations of general ARAPs at the Oaklawn Estates Construction Site in Eads, Tennessee.

26. Oaklawn is a 225-acre residential construction site located east of Memphis in Eads, Shelby County, Tennessee. The Site is bounded to the north by Grays Creek. A tributary to Grays Creek, Field Creek, flows across the Site from the eastern property boundary to the northwestern corner of the Site, where it joins Grays Creek. An unnamed tributary to Field Creek runs north through the length of the Site along the western side of the property before joining Field Creek in the north-central portion of the Site. Grays Creek flows into the Wolf River, a traditionally navigable water that flows into the Mississippi River, approximately 7 miles from the Site. Grays Creek and Field Creek are depicted as perennial streams on USGS maps, flow for at least three months of the year, and exhibit other characteristics of perennial waterbodies. The unnamed tributary exhibits numerous characteristics of a perennial waterbody, flows for at least three months of the year, and flowed during each of the inspections discussed below. Grays Creek, Field Creek and the unnamed tributary to Field Creek each have a continuous bed and bank and ordinary high water marks; provide a constant supply of water to the Wolf River; and contribute organic matter, nutrients and sediment to the Wolf River. Grays Creek, Field Creek and the downstream portion of the unnamed tributary to Field Creek are "navigable waters" within the meaning of 33 U.S.C. § 1362(7), and waters of the state within the meaning of Tenn. Code

Ann. § 69-3-103(42).

27. At all times relevant to this Complaint until December 31, 2009, the Site was owned by Latting Road Partners, LLC and/or David Miller, LLC. On April 1, 2005, Latting Road Partners, LLC transferred it to David Miller, LLC. On July 27, 2007, David Miller, LLC transferred the property back to Latting Road Partners, LLC.

28. Latting Road Partners, LLC is a limited liability company whose principal is David Miller. Latting Road Partners, LLC filed a Chapter 7 bankruptcy petition on April 16, 2010. According to the Notice of Commencement of Case, there are appear to be no assets available from which unsecured creditors will be paid.

29. Construction on the Site commenced no later than April 18, 2005, well before coverage under the TNCGP was obtained on October 12, 2005.

30. On April 21, 2005, TDEC issued a Notice of Violation ("NOV") to Latting Road Partners, LLC, addressed to the attention of David Miller, citing violations of the WQCA. The NOV determined that the defendants had violated the WQCA by commencing construction without obtaining coverage under the TNCGP.

31. On August 9, 2005, EPA issued an Administrative Order ("AO") pursuant to 33 U.S.C. § 1319(a) to Latting Road Partners, LLC regarding the Site. The AO ordered the respondent to, among other things, immediately obtain permit coverage from the State or cease discharging from the Site.

32. Plaintiffs conducted numerous inspections of the Site, including, but not limited to, inspections in: April 2005, March 2006, January 2007, July 2007, November 2007, July 2008, August 2008, and April 2009.

33. In each of the inspections mentioned in the previous paragraph, plaintiffs documented numerous violations of the CWA, the WQCA, and the TNCGP, including, but not limited to: commencement of activities without coverage under the TNCGP; commencement of activities without prior authorization under a general ARAP; no SWPPP on site; missing or inadequate BMPs; evidence of off-site discharges of sediment into receiving waters; failure to stabilize areas during periods of no construction activity; the placement of solid materials into waters of the state when not authorized by a CWA Section 404 permit or a state ARAP; and work done not in conformance with the terms and conditions of general ARAPs, including, but not limited to, inadequate erosion and sediment controls and obstruction of flow caused by sediment entering waters or by improper placement of rip-rap rock.

34. In January 2007, TDEC inspected the Site and documented gullies forming under the matting installed on the stream banks, which was installed where a road crossing had previously been constructed without authorization being granted under the General ARAP for the Construction and Removal of Minor Road Crossings. No authorization had been granted for the stream banks to be stabilized, with the referenced matting, under the General ARAP for Bank Stabilization.

35. In July 2007, TDEC inspected the Site, and documented that an earthen dam had been constructed in the unnamed tributary to Field Creek, completely obstructing the flow of the tributary. TDEC also documented that a utility line crossing in the process of being constructed was obstructing the flow of Grays Creek. TDEC further documented the construction of a temporary road crossing that was constructed prior to receiving authorization under the General ARAP for the Construction and Removal of Minor Road Crossings.

36. In November 2007, TDEC inspected the Site and observed an improperly constructed utility line crossing obstructing Field Creek and Grays Creek.

37. In July 2008, TDEC inspected the Site and found that there appeared to be no construction activity ongoing at the Site. Stabilization measures were inadequate to prevent erosion and further discharges of sediment to navigable waters or waters of the state. Also as of July 2008, a utility line constructed across Grays Creek was obstructing the flow of the stream.

38. In April 2009, EPA inspected the Site and found that Site BMPs were not being maintained, including: numerous failing silt fences; inadequate check dams; inadequate stabilization. EPA also noted that riprap was placed along the utility crossing of both Grays Creek and Field Creek partially obstructing the flow. Lastly, EPA noted again that the Site was not appropriately stabilized.

39. None of the activities described in paragraphs 33 to 38 above were authorized by the United States Corps of Engineers under Section 404 of the Clean Water Act or by the State of Tennessee under a general ARAP.

40. Defendant engaged in construction activities at Oaklawn that resulted in the disturbance of more than five acres.

41. Defendant controlled the plans and specifications for construction activities, or otherwise met the definition of owner or operator under 40 C.F.R. § 122.2 and the Part 2.2.1 of the TNCGP, and was therefore required to obtain NPDES permit coverage for its storm water discharges from construction activities, and to comply with all applicable requirements and conditions under the Act, its regulations, and the WQCA, its regulations, and the TNCGP. 33 U.S.C. § 1342; 40 C.F.R. §§ 122.21, 122.26; Tenn. Code Ann. §§ 69-3-108(b)(1) and 69-3-114(b);

and TNCGP, Part 1.2.1.

42. Defendant's construction activities resulted in the addition of "pollutants," including rock, sand, industrial waste, solid waste, and other pollutants, including dredged and fill material, to streams, ditches, or other conveyances that discharge to streams, creeks, and other water bodies that are "waters of the United States," within the meanings of Section 502(6) and (7), of the Act, 33 U.S.C. § 1362(6), (7), and 40 C.F.R. § 122.2. The same addition of "pollutants" were discharged to waters of the state, within the meaning of Tenn. Code Ann. §§ 69-3-103(26) and 69-3-103(42).

43. The Oaklawn Site, as well as the ditches, or other conveyances referenced in Paragraph 42 above, constitute "point source[s]" because a "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to, any pipe, ditch . . . ." 33 U.S.C. § 1362(14). The Site is also a "source" as defined by Tenn. Code Ann. § 69-3-103(35).

44. By causing the addition of such pollutants to waters of the United States and waters of the state through point source(s), or a source, defendant has engaged in the "discharge of pollutants" within the meanings of Sections 301 and 502(12) of the Act, 33 U.S.C. §§ 1311 and 1362(12) and 40 C.F.R. § 122.2; and Tenn. Code Ann. § 69-3-103(10).

45. Defendant commenced alterations to waters of the state prior to receiving authorization under a general ARAP. See Tenn. Code Ann. §§ 69-3-108(b)(1) and 69-3-114(b).

46. On December 31, 2009, the Bank of Bartlett bought the Site at auction following its foreclosure on the property for non-payment of the debt owed to it by Latting Road Partners, LLC and/or David Miller, LLC.

**FIRST CLAIM FOR RELIEF**

FOR DISCHARGE OF POLLUTANTS IN
STORM WATER WITHOUT AN APPLICABLE PERMIT

47. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 46.

48. Defendant discharged pollutants in storm water to waters of the United States and waters of the state without coverage under an applicable permit from at least April 18, 2005 to October 12, 2005, in violation of CWA Section 301, 33 U.S.C. § 1311, and Tenn. Code Ann. §§ 69-3-108 and -114.

49. Pursuant to 33 U.S.C.§ 1319, Defendant is liable for civil penalties of up to $32,500 per day for each such violation.

50. Pursuant to Tenn Code Ann. § 69-3-115(a)(2)(D), defendant is liable for civil penalties of up to $10,000 per day for each such violation.

**SECOND CLAIM FOR RELIEF**

FOR FAILURE TO COMPLY WITH THE REQUIREMENTS
OF THE CLEAN WATER ACT AND THE TNCGP

51. Plaintiffs allege and incorporate by reference Paragraphs 1 through 46.

52. Defendant violated the terms and conditions of TNCGP on numerous occasions, in violation of Tenn. Code Ann. § 69-3-114(b), including but not limited to the following violations: no SWPPP on site; missing or inadequate BMPs; evidence of off-site discharges of sediment into receiving waters; failure to stabilize areas during periods of no construction activity; obstructions of at least three streams.

53. Violations of the TNCGP are violations of the Clean Water Act pursuant to 33

U.S.C. § 1311(a).

54. To date, defendant has not remedied the conditions at the site and thus remains in non-compliance with the terms and conditions of the TNCGP. Unless enjoined, these violations will continue.

55. Pursuant to 33 U.S.C.§ 1319, defendant is liable for injunctive relief and civil penalties of up to $32,500 per day for each violation through January 12, 2009.

56. Pursuant to Tenn. Code Ann. §§ 69-3-117 and -115, defendant is liable for injunctive relief and civil penalties of up to $10,000 per day for each such violation.

## THIRD CLAIM FOR RELIEF

FOR ALTERATIONS OF WATERS OF THE STATE OF TENNESSEE
WITHOUT AN APPLICABLE PERMIT

57. The State of Tennessee alleges and incorporates by reference Paragraphs 1 through 46.

58. Defendant commenced alterations to waters of the state prior to receiving authorization under a general ARAP, in violation of Tenn. Code Ann. §§ 69-3-108(b)(1) and 69-3-114(b).

59. Pursuant to Tenn. Code Ann. § 69-3-115, defendant is liable for civil penalties up to $10,000 per day for each such violation.

## FOURTH CLAIM FOR RELIEF

FOR FAILURE TO COMPLY WITH THE REQUIREMENTS
OF GENERAL ARAPs

60. The State of Tennessee alleges and incorporates by reference Paragraphs 1 through 46.

61. Defendant violated the terms and conditions of the General ARAPs for the Construction and Removal of Minor Road Crossings and Utility Line Crossings including, but not limited to the following violations: inadequate erosion and sediment controls and obstruction of flow caused by sediment entering waters or by improper placement of rip-rap rock.

62. To date, the site remains non-compliant with the terms and conditions of the General ARAPs for the Construction and Removal of Minor Road Crossings and Utility Line Crossings.

63. Pursuant to Tenn. Code Ann. §§ 69-3-117, and -115, defendant is liable for injunctive relief and civil penalties of up to $10,000 per day for each such violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs the United States of America and the State of Tennessee respectfully request that this Court:

A. Order defendant to comply with the terms of the Act, the WQCA, and the conditions of the TNCGP at Oaklawn by remedying the existing violations, including removing existing stream obstructions;

B. Assess civil penalties pursuant to 33 U.S.C. § 1319(d) against defendant of up to $32,500 per day for each violation through January 12, 2009;

C. Assess civil penalties pursuant to Tenn. Code Ann. § 69-3-115(a)(2)(D) against defendant of up to $10,000 per day for each violation;

D. Award the United States and Tennessee their costs and disbursements in this

action; and

E. Grant any such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Ignacia S. Moreno
IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

/s/ Lori Jonas
LORI JONAS, D.C. Bar No. 436916
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-4080
(202) 514-2583 - fax
lori.jonas@usdoj.gov

LAWRENCE J. LAURENZI
United States Attorney
Western District of Tennessee

GARY VANASEK
Assistant United States Attorney
Western District of Tennessee
800 Clifford Davis Federal Office Building
Memphis, TN 38103

/s/ Robert E. Cooper, Jr.
ROBERT E. COOPER, JR.
Tennessee Attorney General & Reporter

/s/ Phillip R. Hilliard
PHILLIP R. HILLIARD
Assistant Attorney General
Tennessee BPR No. 021524
Environment Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-4612
Phillip.Hilliard@ag.tn.gov

OF COUNSEL:

Margaret Kroening
Assistant Regional Counsel
U.S. EPA, Region 4
61 Forsyth Street, SW
Atlanta, GA 30303